Fuchsberg, J.
(dissenting). I too would reverse in each of these cases.
My deepening concern over the proliferation of rationales which erode the protection the warrant requirement was intended to provide against illegal governmental intrusions on the privacy of home and person puts me at one with Judge Cooke in what he says so well on that subject today. (See, also, Younger, Constitutional Protection on Search and Seizure Dead? 3 Trial, Aug.-Sept., 1967, at p 41.)
But on the matter of "inevitable discovery” and the role it plays in the Payton case in particular, while my views are in harmony with the analysis on which Judge Wachtler would dispose of that issue here, I would add some thoughts of my own.
Though hardly universally accepted (see Fitzpatrick v New York, 414 US 1050 [White, J., dissenting from denial of certiorari]), the "inevitable discovery” exception to the exclusionary rule commended itself to those with whom it originally won favor largely because conceptually it was to apply in factual contexts which, in spirit, if not in dictionary definition, bespoke "inevitability”. Thus, while I appreciate the majority’s reluctance to continue a commitment to a definition *319 which calls for the certitude, if not predestination, connoted by a literal reading of the word "inevitable”, it seems to me that the shift the majority today makes to one which talks only in terms of a degree of "probability” undermines its validity.
No matter how sincerely employed, hindsight rationalization of a train of events that never actually took place is bound to be weighted down with subjective factors difficult to appraise or disprove. Consequently, it would almost always be possible to make a colorably persuasive argument that the illegally discovered evidence would have been turned up in any event.
It follows that the sidestepping of constitutional safeguards will become all too easy — as is well illustrated by Judge Wachtler’s revealing recital of the Payton facts — unless the People, when relying on "inevitable discovery”, are made to meet that burden of proof which, short of certainty, is most demanding and most comprehendible. Therefore, if, as a predicate for the invocation of inevitable discovery, we are to move to an avowed standard short of true "inevitability”, it should be to one that asks no less than proof that lawful discovery would have taken place beyond a reasonable doubt.
The legal distinctions among our varied standards of proof are too often honored in their semantics rather than in their substance (see 9 Wigmore, Evidence [3d ed], § 2497). No doubt this is because they are easier to articulate than to apply. But, at least, the ingrained familiarity which the concept of proof beyond a reasonable doubt enjoys among the members of our society — repeatedly intoned as it is in the determination of guilt or innocence under our system of criminal justice — affords immeasurably more assurance of strict application of its language than we can count on in the verbalistic shadowland where words and phrases such as "preponderance”, "satisfactory”, "clear and convincing”, "reasonable certainty” and now "high degree of probability” too often are forced to dwell.